# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SUSAN HEWLETT,

        Plaintiff,

v.                                       Case No:   6:20-cv-1268-LHP

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

_____

## MEMORANDUM OF DECISION[1]

Susan Hewlett ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") finding that her previously determined disability, which entitled her to Disability Insurance Benefits ("DIB"), ceased from July 7, 2016 through October 31, 2018.  (Doc. 1).  Claimant raises one argument challenging the Commissioner's final decision, and based on that argument, requests that the matter be reversed and remanded for further administrative proceedings.  (Doc. 29, at 20, 35).  The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  *See* Docs. 21, 23, 26.

that the final decision of the Commissioner should be affirmed.   (*Id.*, at 35).   For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

## I.   PROCEDURAL HISTORY.

On December 4, 2012, Claimant filed an application for DIB, alleging a disability onset date of December 9, 2011.   (R. 296-300).   On January 8, 2013, the Social Security Administration ("SSA") issued a favorable determination, finding that Claimant was disabled as of December 9, 2011.   (R. 155-64).   On July 7, 2016, on continuing disability review, the SSA determined that Claimant's disability ended on July 7, 2016 and therefore terminated Claimant's disability benefits as of September 30, 2016.   (R. 165, 185-89).   Claimant filed a request for reconsideration, and the SSA upheld its determination.   (R. 192, 209-14).   Claimant thereafter requested a hearing before an ALJ.   (R. 222).   A hearing was held before the ALJ on February 26, 2019, at which Claimant was represented by an attorney.   (R. 88-102).   Claimant and a vocational expert ("VE") testified at the hearing.   (*Id.*).

Following the hearing, the ALJ issued a partially favorable decision finding that Claimant's disability ended on July 7, 2016, but Claimant became disabled again on November 1, 2018.   (R. 7-31).   Claimant sought review of the ALJ's decision by the Appeals Council.   (R. 294-95).   On May 13, 2020, the Appeals Council denied the request for review.   (R. 1-6).   Claimant now seeks review of the final decision of the Commissioner by this Court.   (Doc. 1).

## II.    THE ALJ'S DECISION.[2]

A claimant's continued entitlement to disability benefits must be reviewed periodically.    20 C.F.R. § 404.1594(a).    The Commissioner may terminate a claimant's benefits upon a finding there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work, and the claimant can now engage in substantial gainful activity.    42 U.S.C. § 423(f)(1).    To determine whether disability should be terminated, the Commissioner conducts an eight-step evaluation process to determine:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(3) If the claimant's impairments do not meet a listing, whether there has been medical improvement;

(4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;

(5) If there is improvement related to a claimant's ability to do work, whether an exception to medical improvement applies;

(6) If medical improvement is related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, whether the claimant has a severe impairment;

---

[2] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   (Doc. 29).   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

(7) If the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*See* 20 C.F.R. § 404.1594(f).   "Medical improvement" is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] [was] disabled or continued to be disabled."   § 404.1594(b)(1).

To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision finding that the claimant is disabled with new medical evidence. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985); *see* 20 C.F.R. § 404.1594(c)(1).   To terminate benefits, the Commissioner may not focus only on new evidence about disability but must also evaluate the evidence upon which the claimant was originally found to be disabled.  *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).   Without a comparison of the old and new evidence, there can be no adequate finding of improvement.  *Id.*

Here, after reviewing all of the evidence of record, the ALJ followed the eight-step evaluation process set forth in § 404.1594.  (R. 11-21).  The ALJ found that Claimant had not engaged in substantial gainful activity through the date of the decision.  (R. 13).  The ALJ determined that Claimant's comparison point decision

("CPD") was January 8, 2013.[3]   (R. 13).   The ALJ noted that at the time of the CPD, Claimant had the following medically determinable impairments: recurrent methicillin-resistant Staphylococcus aureus (MRSA) infections and clostridium difficile (CDIF) colitis.   (*Id.*).   At the time of the CPD, these impairments were found to medically equal Section 8.04 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and, as such, Claimant was found to be disabled.   (*Id.*).

Next, the ALJ determined that since July 7, 2016, Claimant has (and continues) to suffer from the following severe impairments:   rheumatoid arthritis, diabetes mellitus, disorders of the gastrointestinal system, hypertension, and obesity.   (*Id.*).   The ALJ found that none of these impairments met or medically equaled a listed impairment.   (R. 14-15).   With respect to Claimant's history of MSRA infections, the ALJ found that there were no subsequent reports that Claimant had MRSA after July 7, 2016.   (R. 15-16).   Accordingly, the ALJ determined that, as of July 7, 2016, Claimant's MRSA no longer constituted a listed impairment, and that due to the lack of subsequent reports of MRSA as of July 7, 2016, medical improvement occurred on this date.   (R. 14-16).   The ALJ then determined that Claimant's medical improvement related to her ability to work

---

[3] A CPD is "the most recent favorable medical decision… involving a consideration of the medical evidence and the issue of whether you were disabled or continue to be disabled which became final."   20 C.F.R. § 404.1594(b)(7).

because, by July 7, 2016, Claimant's CPD impairments no longer met or medically equaled the same listing that was met at the time of the CPD.   (R. 16).

Upon a review of the record, the ALJ found, based on Claimant's current impairments (*i.e.*, rheumatoid arthritis, diabetes mellitus, gastrointestinal disorders, hypertension, and obesity), that from the time period July 7, 2016 through October 31, 2018, Claimant had the residual functional capacity ("RFC") to perform a full range of light work as defined in the Social Security regulations.[4]   (R. 16).   The ALJ further found that from July 7, 2016 through October 31, 2018, Claimant was capable of performing her past relevant work as a pharmacy technician.   (R. 20). Therefore, the ALJ determined that Claimant's disability ended on July 7, 2016. (*Id*.).   However, the ALJ found that beginning on November 1, 2018, Claimant's RFC was reduced to a full range of sedentary work as defined in the Social Security regulations, as a result of an additional impairment of disorders of the spine.   (*Id*.). Therefore, based on Claimant's restriction to sedentary work, and considering

---

[4] Pursuant to the Social Security regulations, light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Claimant's age, education, and work experience, the ALJ found that Claimant was disabled again beginning on November 1, 2018.   (R. 22).

## III.    STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   Courts apply the same standard of review in disability cessation cases as in cases where an individual is denied disability benefits in the first instance.   *See, e.g., Hendley v. Comm'r of Soc. Sec.*, No. 3:20-cv-797-MAP, 2022 WL 278675, at *2 (M.D. Fla. Jan. 31, 2022); *Hallback v. Kijakazi*, No. 8:20-cv-1059-CPT, 2021 WL 3879048, at *3 (M.D. Fla. Aug. 31, 2021). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining

whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises one assignment of error: that the ALJ's finding that Claimant was capable of substantial gainful employment from July 7, 2016 until October 31, 2018 is not supported by substantial and competent evidence.   (Doc. 29, at 20).   Specifically, Claimant argues that the ALJ erred in his consideration of the medical opinions of Dr. Howard Offenberg, M.D., Claimant's treating rheumatologist.   (*Id.*, at 22-27). As this is the only issue raised by Claimant, this is the only issue the Court will address.[5]

---

[5] Claimant's argument on this point is less than clear, but it appears that this is the only issue of alleged error Claimant raises.   To the extent that Claimant seeks to raise any further arguments, such arguments have not been adequately developed and are not supported by any citation to legal authority.   *See, e.g.*, Doc. 29, at 27.   Accordingly, the Court deems any such arguments waived.   *See generally N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *see also Ross v. Comm'r of Soc. Sec.*, No. 6:15-cv-1764-Orl-DCI, 2017 WL 1180004, at *2, n.2 (M.D. Fla. Mar. 30, 2017) (finding claimant's argument waived given the "perfunctory nature" of the argument (citing *McClain of Ga., Inc.*, 138 F.3d at 1422)).

An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). In cases where the SSA terminates a claimant's benefits, the Commissioner evaluates whether the claimant has experienced medical improvement, which relates to a claimant's ability to work if a claimant has had a decrease in the severity of her impairments and her RFC has increased. 20 C.F.R. § 404.1594(b)(3); *see also Mazuji v. Comm'r, Soc. Sec.*, 577 F. App'x 959, 961 (11th Cir. 2014).[6] "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citations and quotations omitted).

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. § 404.1545(a)(3). The ALJ must consider a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with

---

[6] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36-2.

the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. *Id.* § 404.1527(c). [7]   "These factors apply to both examining and non-examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r,* 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "The requisite 'good cause' is not provided by the report of a nonexamining physician because the opinion of such a person is entitled to little weight if it contradicts the opinion of the claimant's treating physician." *Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987).

The ALJ must state the weight assigned to each medical opinion and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support

---

[7] Although the SSA regulations have been amended effective March 27, 2017, the new regulations apply only to applications filed on or after that date. *See* 20 C.F.R. §§ 404.1520c, 416.920c.   Because Claimant filed her DIB application prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 govern here. *See also Ramphal v. Saul*, No. 6:18-cv-116-Orl-28SPF, 2019 WL 3997893, at *3, n.6 (M.D. Fla. Aug. 7, 2019) (applying pre-March 27, 2017 regulations to benefits cessation case where claimant's application for benefits was filed in 2000), *report and recommendation adopted sub nom. Ramphal v. Comm'r of Soc. Sec.*, 2019 WL 3997486 (M.D. Fla. Aug. 23, 2019).

of the assigned weight may prevent the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence.   *Id.*

Claimant asserts, and the Commissioner does not dispute, that Dr. Offenberg is Claimant's treating physician.   (Doc. 29, at 22).   On May 17, 2016, Dr. Offenberg completed an Arthritis/Rheumatology Questionnaire (Exhibit 22F) on behalf of Claimant.   (R. 876-77).   Dr. Offenberg stated that Claimant had mild tenderness due to inflammatory arthritis but exhibited 5/5 grip strength and no motor deficits or gait disturbance.   (R. 877).   Dr. Offenberg did not comment on Claimant's ability to button clothing, turn doorknobs, write, or grip small objects, stating that these questions are "subjective."   (*Id.*).   Dr. Offenberg noted that Claimant was treated with Mobic and Norco, but she experienced no adverse effects as a result of taking these medications.   (*Id.*).

In a February 21, 2019 Physical Residual Capacity Assessment (Exhibit 44F), Dr. Offenberg opined that Claimant could lift and/or carry less than 10 pounds, stand and/or walk (with normal breaks) for a total of less than two hours in an eight-hour workday, sit (with normal breaks) for a total of less than about six hours in an eight-hour workday, and, with regard to her ability to push and/or pull, was limited in the upper extremities.   (R. 1127).   In response to a directive to explain how and why the evidence supports these conclusions, Dr. Offenburg noted that Claimant has osteoarthritis and rheumatoid arthritis.   (*Id.*).   He further stated that

his answers were "mostly subjective," and "best case answers," as it was "difficult to be certain." (*Id.*).

With regard to postural limitations, Dr. Offenberg opined that Claimant could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and balance, and could never stoop, kneel, crouch, or crawl. (R. 1128). Dr. Offenberg provided no explanation in support of these conclusions. (*Id.*). In assessing Claimant's manipulative limitations, Dr. Offenberg opined that Claimant was limited in her ability to reach in all directions, handling, and fingering, but had no limitations in feeling. (R. 1129). Again, Dr. Offenberg provided no explanation in support of these conclusions. (*Id.*). Dr. Offenberg assessed no visual, communicative, or environmental limitations in Claimant. (R. 1129-30). The form further directed Dr. Offenberg to discuss symptoms alleged by Claimant to produce physical limitations; particularly whether, in Dr. Offenberg's judgment: (1) the symptoms are attributable to a medically determinable impairment; (2) the severity or duration of the symptoms is disproportionate to the expected severity or duration on the basis of Claimant's medically determinable impairment; and (3) the severity of the symptoms and its alleged effect on function is consistent with the total medical and nonmedical evidence. (R. 1131). In response to this directive, Dr. Offenberg stated as follows: "Patient on meds for arthritis and chronic pain. Pain is subjective, so difficult for a physician to have certainty as to the extent of discomfort.

Patient of mine for 15 years, always compliant and no evidence of exaggeration or misrepresenting pain."  (*Id.*).

During the administrative hearing on February 26, 2019, the ALJ noted that the State agency physicians concluded that Claimant could perform a full range of light work.  (R. 99).  According to the ALJ, the issue before him was whether Claimant could in fact perform light work or whether she was restricted to sedentary work, and, if the latter, the date Claimant became restricted to sedentary work.  (R. 99-100).[8]  The ALJ gave Claimant 30 days to go back to Dr. Offenberg, provide him with a copy of his May 17, 2016 questionnaire responses (Exhibit 22F) and ask Dr. Offenberg to provide an opinion as to when the limitations he assessed in the February 21, 2019 assessment (Exhibit 44F) began.  (R. 100).

In a letter dated February 27, 2019, the day after the hearing, Claimant's counsel asked Dr. Offenberg to provide an opinion "as to how far back [Claimant's] current restrictions apply."  (R. 1135).  Claimant's counsel stated that this opinion was "needed to determine how long [Claimant] has in fact been disabled."  (*Id.*).  On March 19, 2019, Dr. Offenberg provided a brief, handwritten response, which he wrote on the bottom of the letter from Claimant's counsel.  (Exhibit 45F).  Dr. Offenberg noted that Claimant was diagnosed with rheumatoid arthritis 14 years

---

[8] Upon questioning from Claimant's attorney representative, the ALJ clarified that based on the record, Claimant was disabled, but the question would be the start date for Claimant's disability.  (R. 100).

ago, but the exact date of Claimant's disability was "impossible to determine."   (R. 1135).   Dr. Offenberg further stated that he "estimate[s] that the disability started approximately 2016.   This is a rough estimate, of course exact time of disability is not able to be accurately determined."   (*Id.*).

In the decision, the ALJ addressed Dr. Offenberg's opinions, including his post-hearing statements, as follows:

> The claimant is treated by Howard Offenberg, MD, a rheumatologist. . . .
>
> Dr. Offenberg reported that the claimant has no motor deficits or gait disturbances as a result of rheumatoid arthritis. . . .   Although Dr. Shoemaker noted that she had difficulty with fine manipulation such as opening doors and buttoning shirts, Dr. Offenberg did not comment on the claimant's ability to perform these types of activities as he noted that they were "subjective."   (Exhibit 22F).
>
> On May 17, 2016, Dr. Offenberg completed an inflammatory arthritis questionnaire, and stated that the claimant had mild tenderness but normal grip strength, no motor deficits and no gait disturbance.   (Ex. 22F).   These objective medical findings from the claimant's treating specialist are entitled to considerable weight. . . .
>
> Despite the claimant's ongoing complaints of pain noted in the treatment records, (Ex. 31F), the questionnaire that Dr. Offenberg completed on May 17, 2016 shows no limitations, no difficulty with fine manipulation, and full grip strength.   (Ex. 22F). …
>
> Post hearing statements from Dr. Offenberg were considered in assessing the claimant's residual functional capacity (Exh. 44F, 45F).   I did not assign any significant weight to Exhibit 45F prior as it is a conclusory statement indicating that he believes that the claimant was "disabled," which is a legal conclusion, rather than a medical opinion. I considered the limitations Dr. Offenberg noted in Exhibit 44F, but did not assign any significant weight to these limitations prior to the

established onset date, as the limitations are not well supported by objective clinical abnormalities documented either in Dr. Offenberg's treatment records, or any other evidence of record.

In deciding the claimant's residual functional capacity, I also considered both the claimant's and Dr. Offenberg's statements regarding the claimant's pain.   Notwithstanding any pain, the claimant was able to travel out of state, (Exs. 26F/3,6-7), reported that she drove, prepared simple meals, did light housework, walked and fed two Chihuahuas, (Ex. 23F), and engaged in gym exercises and biking (Exh. 32F/1).   Hence, while the claimant likely experienced some pain, the record does not reflect a level of pain that would preclude light activities, or that could not be controlled with medication.

(R. 17-20).

As best the Court can glean from the Joint Memorandum, Claimant appears to make three arguments with respect to the ALJ's treatment of Dr. Offenberg's opinions: (1) the ALJ erred in rejecting Dr. Offenberg's February 21, 2019 assessment, because record evidence supports Claimant's complaints of disabling pain, (2) the ALJ erred in concluding that Dr. Offenberg's March 19, 2019 post-hearing statement was not entitled to any significant weight, and (3) the ALJ erred in relying on evidence of Claimant's daily activities to find that her pain was not as limiting as Dr. Offenberg's February 21, 2019 assessment suggests.   (Doc. 29, at 22-27).[9]   The Court will address each of these arguments in turn.

---

[9] In the last paragraph of Claimant's portion of the Joint Memorandum, Claimant points to evidence in the record which she asserts demonstrates that Claimant suffered from "significant" gastrointestinal issues.   (Doc. 29, at 27).   However, Claimant provides no legal authority or analysis on this point.   *See id.*   Therefore, to the extent that Claimant intends to make an argument

Claimant first appears to argue that it was error for the ALJ to reject Dr. Offenberg's February 21, 2019 opinion, because the record contains evidence documenting Claimant's complaints of disabling pain.    *See* Doc. 29, at 22-25. Claimant points to treatment records of Dr. Offenberg from 2014 to 2016, indicating that Claimant suffered from wrist and shoulder pain and continually complained of pain in general.   (*Id.*, at 23 (citing R. 868-71, 874)).    Claimant also points to 2016 treatment notes from Claimant's treating general physician, Dr. Saxour, which she contends also document her complaints of pain.[10]   (*Id.* (citing R. 763, 834-886, 917, 938-43, 945, 947)).    But beyond citing to records that she believes offer further support for Dr. Offenberg's opinion, Claimant fails to demonstrate that the ALJ erred in his consideration of the opinion.    The issue for the Court to determine is not whether there is substantial evidence to support *Claimant's* position; the issue is whether substantial evidence supports *the ALJ's* decision, and on this point Claimant's argument fails.    *See Allen*, 2020 WL 263665, at *4 (finding no error where

---

here, the Court finds that such argument is waived.    *See McClain of Ga., Inc.*, 138 F.3d at 1422 ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *see also Allen v. Comm'r of Soc. Sec.*, No. 6:18-cv-1806-Orl-DCI, 2020 WL 263665 (M.D. Fla. Jan. 17, 2020) (waiving perfunctory arguments as arguably abandoned).

[10]  Claimant also points to a notation from Dr. Saxour that Claimant is "still unable to work due to pain limitations from her rheumatoid arthritis," R. 885, but appears to simultaneously acknowledge that the issue of an individual's ability to work is a question reserved for the Commissioner.  (Doc. 29, at 23-24).   Further, Claimant provides no argument or authority with regard to this record, other than merely stating that the record provides further support for Dr. Offenberg's conclusion.   (*Id.*).

claimant "fail[ed] to provide any specific argument to explain why the ALJ's decision was not supported by substantial evidence, instead only citing evidence that Claimant believes supports his position"); *see also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence."); *Phillips*, 357 F.3d at 1240 n.8 (stating that the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]'") (citation omitted).

Moreover, the ALJ discussed in great detail the medical evidence of record with respect to Claimant's pain, including several of the records cited by Claimant. *See, e.g.*, R. 17 (citing R. 868, 884, 959-71) (noting that Claimant reported to Dr. Saxour in May 2016 that she had "worsening pain from rheumatoid arthritis in her wrists, shoulders, hips, hands and low back," and that Claimant reported "bilateral wrist pain and bilateral shoulder pain" to Dr. Offenberg on April 4, 2016, and acknowledging "Claimant's ongoing complaints of pain noted in the treatment records"). The Court therefore finds that the ALJ's decision to reject Dr. Offenberg's February 21, 2019 opinion is supported by substantial evidence. *See* R. 877, 881-82, 909, 912-13, 972, 1127-31; *see also D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated

at least one specific reason for disregarding the opinion and the record supports it."). And although the ALJ did not specifically reference every record cited by Claimant, the ALJ did not err by failing to do so, as it is clear that the ALJ considered Claimant's condition of chronic pain as a whole. *See, e.g.*, *Sullivan v. Comm'r of Soc. Sec.*, No. 5:15-cv-56-Oc-DNF, 2016 WL 1068481, at *5 (M.D. Fla. Mar. 18, 2016) ("[T]he ALJ did not err by failing to discuss every aspect of the treatment records from Dr. Singh as long as the Court can, as is the case here, determine that the ALJ considered the Plaintiff's medical condition as a whole." (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014))). Accordingly, Claimant's first argument fails, and the ALJ's decision is supported by substantial evidence. *See* R. 877, 881-82, 909, 912-13, 972, 1127-31.[11]

The Court is also unpersuaded by Claimant's second argument. As noted above, the ALJ determined that Dr. Offenberg's March 19, 2019 post-hearing statement was not entitled to any significant weight, because the statement that Claimant's "disability started [in] approximately 2016" was a legal conclusion

---

[11] Claimant also points to the ALJ's statement in the decision that "[d]espite the claimant's ongoing complaints of pain noted in the treatment records, (Ex. 31F), the questionnaire that Dr. Offenberg completed on May 16, 2016, shows no limitations, no difficulty with fine manipulation, and full grip strength, (Ex. 22F)." (Doc. 29, at 24 (citing R. 19)). Claimant appears to speculate that Dr. Offenberg made these assessments because the questionnaire did not request further information from the provider as to how Claimant's rheumatoid arthritis pain affected Claimant's work-related abilities. (*Id.*). To the extent that Claimant attempts to speculate as to Dr. Offenberg's rationales in completing the questionnaire, such speculation is improper and not a basis to reverse the ALJ. *See, e.g.*, *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 743 (11th Cir. 2015); *McHenry v. Berryhill*, 911 F.3d 866, 874 (7th Cir. 2018).

rather than a medical opinion.   (R. 19).   Pursuant to the SSA's regulations, an opinion on an issue reserved for the Commissioner, such as whether an individual is disabled, is not entitled to any significant weight.   20 C.F.R. § 404.1527(d); *see also Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) (ALJ did not err by declining to assign any significant weight to treating physician's opinion that claimant was disabled because "by law, that determination is reserved to the Commissioner, and no special significance is given to an opinion on issues reserved to the Commissioner").   In challenging the ALJ's determination that Dr. Offenberg's opinion was not entitled to any significant weight , Claimant speculates that while Dr. Offenberg admittedly commented on when he believed Claimant became "disabled," Dr. Offenberg intended to provide an opinion as to the date that Claimant's restrictions began, rather than a legal conclusion that Claimant was disabled as of 2016.   (Doc. 29, at 25-26).   But the Court cannot, and will not, find reversible error based on counsel's mere speculation.   *See, e.g.*, *Mosley*, 633 F. App'x at 743 (rejecting as speculative claimant's argument that ALJ failed to fully develop record on claimant's alleged mental impairments where claimant stated that she has an intellectual disability because, if tested, her I.Q. would "likely" be 70 or below); *McHenry*, 911 F.3d at 874 (discounting Claimant's speculative arguments that her medical providers must have misunderstood her statements that she merely tried to work and was not actually working during the

relevant period).   Accordingly, the Court does not find that the ALJ erred in this regard.

Nor is the Court persuaded by Claimant's third and final argument that the ALJ erred by rejecting Dr. Offenberg's statements regarding Claimant's pain on the basis of Claimant's daily activities.   As noted above, the ALJ relied on Claimant's reported abilities to travel out of state, drive, prepare simple meals, do light housework, walk and feed her two dogs, and engage in gym exercises and biking, to discount Dr. Offenberg's statements in the February 21, 2019 assessment regarding Claimant's pain.   (R. 19-20 (citing R. 881-82, 909, 912-13, 972)). Claimant asserts that the ALJ's conclusion was error, as there is evidence in the record documenting Claimant's complaints of pain, Claimant has not worked since 2013, and Claimant is prescribed medication for her pain.   (Doc. 29, at 26). Claimant's counsel also speculates that Claimant may have performed various activities such as gym exercises and bicycling in an attempt to alleviate her pain, and that such activities do not contradict that she was suffering from debilitating pain.  (*Id.*).   Claimant further argues that the record does not indicate the extent to which Claimant took care of her dogs, cooked simple meals, did light housework, drove, or went on vacation.   (*Id.*).   Therefore, Claimant argues, the fact that Claimant was able to perform these daily activities does not equate to a finding that she is not disabled.   (*Id.*).

Claimant provides no legal authority in support of this argument, *see id.*, and the Court could therefore reject the argument on this basis alone.   *See McClain of Ga., Inc.*, 138 F.3d at 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *see also Allen*, 2020 WL 263665 (waiving perfunctory arguments as arguably abandoned).   However, even assuming Claimant has not waived this argument, the Court nonetheless finds it unpersuasive, as evidence of a claimant's daily activities can provide good cause to discount a treating physician's opinion. *See, e.g., Phillips*, 357 F.3d at 1241 & n.9 (ALJ had good cause to reject treating physician's opinion where opinion was at odds with physician's prior observations and claimant's admitted daily activities of household chores, dining out, visiting with friends, shopping, trips away from home that involved significant time in the car or airplane, walking, lifting weights, doing water aerobics, and doing yard work); *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 806-07 (finding that evidence of claimant's daily activities, which included engaging in light chores and cooking, driving at least once a week, and shopping, provided good cause for ALJ to discount treating physician's opinion as to extent of claimant's limitations).   And it bears noting that Claimant does not contest the ALJ's recitation of Claimant's daily activities, only that there is other evidence (taking medication, not working, and complaints of pain) that arguably runs counter to those activities, and that

Claimant's counsel's speculation as to the reasons why Claimant engaged in such activities provides sufficient reason to find error.   As discussed above, mere speculation is insufficient to find error, and the record supports the ALJ's findings with regard to Claimant's daily activities.   *See* R. 881-82, 909, 912-13, 972.   Thus, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ did not reversibly err.   *See, e.g.*, *Burdette v. Comm'r of Soc. Sec.*, No. 8:18-cv-1634-T-JSS, 2019 WL 4187631, at *6 (M.D. Fla. Sept. 4, 2019) (ALJ did not err in discounting medical opinion where claimant's "daily activities provide[d] substantial evidence to support the ALJ's decision to discredit [physician's] opinion"); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *14 (M.D. Fla. Dec. 21, 2021) (ALJ's determination about claimant's capabilities to perform certain activities of daily living were supported by substantial evidence and ALJ "did not err by failing to analyze expressly every portion of [claimant's] alleged activities of daily living"), *report and recommendation adopted*, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022).

In sum, Claimant has not demonstrated that the ALJ committed reversible error in his evaluation of Dr. Offenberg's opinions, and the Commissioner's final decision is due to be affirmed.

## V.     CONCLUSION.

Based on the foregoing, it is **ORDERED** that:

1.     The Commissioner's final decision is **AFFIRMED**.

2.     The Clerk of Court is **DIRECTED** to enter judgment in favor of the

Commissioner, and thereafter, to **CLOSE** the case.


**DONE** and **ORDERED** in Orlando, Florida on March 22, 2022.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record